UNITED STATES *v.* STEPHEN RUG MILLS

**No. 5989.**—Invoices dated Courtrai, Belgium, July 28, 1938, etc.
Entered at New York, N. Y., August 11, 1938, etc.
Entry No. 715542, etc.

(Decided February 29, 1944)

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.

*Benjamin A. Levett* (*Benjamin A. Levett* and *Meyer Ohlbaum* of counsel); *Tompkins & Tompkins* by *J. Stuart Tompkins*, associate counsel; for the appellee.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This is an appeal from a decision of a single judge involving the value for duty purposes of certain rugs imported from Belgium. The dates of exportation cover a period from July 1938, through October of the same year. The decision below was reported in Reap. Dec. 5863. The rugs were entered in Belgian francs per square meter at the prices as invoiced, which the importer, the appellee herein, stated to be the export value thereof. These values were advanced by the appraiser to correspond to what he considered to be the foreign value of such or similar rugs, plus 2½ per centum to cover a tax for sales for home consumption, packing included.

It was conceded before the trial court that the tax of 2½ per centum does not apply to export value.

The appellee, the importer of the rugs, contended before the court below that foreign value as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is not applicable because, it was alleged, neither identical nor similar merchandise was "freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported."

Judge Kincheloe, in a very able opinion, sustained the importer's contentions and held that the proper basis of appraisement for these rugs was the export value as defined in section 402 (d) and that the entered values correctly represented export value. This decision was based upon a finding that the evidence showed there was no foreign value for this or similar merchandise as such value is defined in section 402 (c), *supra*, and that such merchandise, at the time of exportation thereof, was freely offered for sale and sold in the principal markets of Belgium, the country of exportation, to all purchasers in the ordinary course of trade, in the usual wholesale quantities of 5,000 to 50,000

square meters or units, for exportation to the United States at the entered values thereof. From that finding the Government appealed to this court, claiming that foreign value is the proper basis of appraisement, and that the importer had failed to make out a *prima facie* case.

In his opinion Judge Kincheloe analyzed the testimony of the appellant's witnesses at length and it would serve no good purpose to again set out their statements. They were both well qualified by long experience in the business of buying and handling rugs such as these to testify as to whether the imported rugs are similar to those sold in the home market for home consumption. It was the opinion of both of these witnesses, based upon such experience, that there was considerable difference in the construction of the two types of rugs; that rugs such as the ones here involved were not salable in the Belgian market principally because the materials entering into their composition differed in quality and in construction, which resulted in a difference in the wearing qualities and also in the quality of the rugs themselves. Both of these witnesses stated that it was part of their duty to make frequent trips to Belgium during which they investigated the price and quality of cotton rugs in the Belgian markets, the cost of the raw materials entering into such rugs, and of market conditions generally, for the purpose of obtaining cheap cotton rugs for export to the United States. Each of them stated that the imported rugs were made to order and it is evident from their testimony that as rug buyers they were constantly working with the manufacturers in Belgium in an endeavor to obtain a rug in which certain blends of cotton could be used, which rug would look well and yet be satisfactory in price. As part of their business as buyers they made comparisons between the rugs sold in the Belgian market for home consumption and those bought by them for export, which comparisons consisted of dissecting, analyzing, and weighing the two types to obtain the percentages of jute and cotton contained in the various qualities.

On the question of usual wholesale quantities they agreed that from 5,000 to 50,000 units or pieces constituted the usual wholesale quantity.

The Government offered and there were received in evidence five reports of a United States Treasury representative which the court below found were insufficient to overcome or contradict the testimony offered by the importer. We have given these reports careful consideration and hold that the court below committed no error in holding that they are insufficient to overcome the testimony of the two well-qualified witnesses.

Counsel for appellant contends that there were no evidentiary facts to support the witnesses' testimony as to the usual wholesale quantity, and cites in support of this position the case of *United States* v. *Semon Bache & Co.*, 25 C. C. P. A. (Customs) 387, T. D. 49466,

and *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* Reap. Dec. 4376. It is contended by the Government that the statements of the witnesses in this respect are conclusions and have no probative value. The *Semon Bache* case, *supra,* involved the value of certain gauge glasses and the court there pointed out that although the witness testified as to what the usual wholesale quantity consisted of, such "witness had an erroneous conception of what, in the contemplation of the law, constitutes wholesale quantities and usual wholesale quantities in the ordinary course of trade," and his conclusions in that regard were entitled to no weight. The case was remanded to the lower court, an appeal was taken from the decision of the division of the Customs Court on remand (Reap. Dec. 4713) on questions of procedure, and the case again decided by the appellate court and reported in 27 C. C. P. A. (Customs) 89, C. A. D. 67. In the case of *United States* v. *Hensel, Bruckmann & Lorbacher, supra,* also cited in support of this point, the allegations in the affidavit in evidence as to wholesale quantities were rejected because the affiant was not qualified to express an opinion on that point. The case of *Jenkins Brothers* v. *United States,* 25 C. C. P. A. (Customs) 90, T. D. 49093, is distinguishable in that there the affiant stated that sales to retailers for resale were not in the usual wholesale quantities, which statement was rejected as a conclusion.

In the case at bar the witnesses, as stated above, were well qualified by their long experience in buying and handling this type of rug to state what constituted the usual wholesale quantity. Their testimony was based on their personal knowledge obtained by visiting every factory in Belgium engaged in producing this type of rug— some twenty in all.

In the appellant's brief it is further alleged that the testimony as to the usual wholesale quantity is contradicted by the invoices here involved, in that the amounts therein set forth are very much less than 5,000 to 50,000 units. One of the witnesses on behalf of the plaintiff below, the appellee here, stated:

> The invoice does not represent a contract, it represents only a segment of a contract. 50 invoices may represent a contract.

Furthermore, the testimony of both of the witnesses for the appellee was "that the quantities had no effect on the price"; that whether the importers in the ordinary course of trade purchased 5,000 or 50,000 units, the price remained the same.

It is further contended by the Government that inasmuch as the importer was granted a continuance in order that purchase orders might be produced to substantiate the testimony as to what number of rugs constituted the usual wholesale quantity and such records were not produced, an inference must be drawn that had they been

produced, they would have failed to substantiate the claim. The judge below in regard to this situation stated:

Counsel for the Government then stated that he would like to reserve the balance of his cross-examination of this witness until he produces the invoices at the next hearing. (R. 64.) It might here be mentioned, however, that when the case was later resumed and the witness appeared for further cross-examination, Government counsel asked him no questions as to his orders. The witness' testimony as to the usual wholesale quantity of the imported rugs in the principal Belgian export markets therefore stands uncontradicted, and his cross-examination in no way weakened his testimony on direct examination.

The trial judge accepted the sworn statements of the witnesses. Inasmuch as he had the benefit of seeing the witnesses and observing their demeanor on the stand his finding as to the usual wholesale quantities will not be reversed by this court.

The appellant produced no oral testimony below but offered and there were received in evidence several reports of special Treasury representatives. An examination of these reports discloses that they fail to rebut the evidence produced on the part of the importer; in fact, in some respects they support the statements of the importer's witnesses.

Upon the record we hold that the evidence establishes that there was no foreign value for such or similar merchandise as such value is defined in section 402 (c) of the Tariff Act of 1930; that the export value as defined in section 402 (d) of said act is the proper basis of appraisement; that the usual wholesale quantities within the meaning of that term as defined in the statute are from 5,000 to 50,000 square meters or units; and that the export values are the entered values.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.